**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TERRANCE NORMAN KENNEDY**                                      **CIVIL ACTION**

**VERSUS**                                                                               **NO. 16-2906**

**WARDEN W. S. McCAIN, ET AL.**                              **SECTION: "R"(1)**

## REPORT AND RECOMMENDATION

Plaintiff, Terrance Norman Kennedy, a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, filed this federal civil action pursuant to 42 U.S.C. § 1983. He sued Warden W. S. McCain, Major Jeff Williams, Lieutenant Anthony Odom, Sergeant Charles Wallace, Corrections Officer Rhonda A. Scoopmire, and Cadet Scott A. Williams.

### Plaintiff's Allegations

In this lawsuit, plaintiff alleges that he was prevented from using the bathroom on his prison tier by defendant Scoopmire on March 19, 2016. Scoopmire explained that a transgender inmate was taking a shower in the tier bathroom, and, therefore, she instructed him to use the bathroom on another tier. Plaintiff later complained about this incident to another prison guard, Lieutenant Whaley, who stated that there was no prison rule which would have prevented plaintiff from using the tier bathroom while the transgender inmate was showering.

The following day, Scoopmire approached plaintiff. After stating that she was aware that he had complained about her actions of the prior day, she again advised plaintiff that she would not allow him in the tier bathroom while the transgender inmate was showering and that he would have to use another tier's bathroom at such times. Plaintiff alleges that he then "respectfully

informed C.O. Scoopmire that I did not intend to honor her 'REQUEST,' and surrender my rights in the process."[1]  He further alleges:

> This exchange, or these exchanges rather, made me feel humiliated, violated, and angry.  I was repeatedly subjected to C. O. Scoopmire's insinuations and allusions regarding my sexuality and her notions of my sexual preferences.  I felt and still feel that her actions were the result of some determination that she had made about my sexuality; that I was possibly a homosexual attracted to other men, or some deviant who could not control some lustful impulse.[2]

Plaintiff next alleges that, on March 20, 2016, Scoopmire "descended upon both of my lockers and proceeded to ransack them, and confiscated numerous items and wrote disciplinary reports."[3]  Plaintiff was written up for a disciplinary rule violation for theft.  On March 22, 2016, he was convicted on that disciplinary charge and sentenced to four weeks of dorm confinement.[4]  Plaintiff appealed, but his appeal was denied.  He alleges that he was denied due process in the hearing.[5]

Plaintiff states that Scoopmire later said that the search was random, but he alleges that it was in fact a form of retaliation.  Plaintiff explains:

> I do not contest the seizure of items from my locker, with the exception of items I possess purchase receipts for.  I do not contest the disciplinary report either, for that matter.  I do, however, contest the timeliness of the search of my lockers by C.O. Scoopmire, and the "underlying intent"; her motive and motivation, and the assistance of others:  their motives and motivation as well.[6]

Plaintiff further alleges that defendant Wallace is in a romantic relationship with Scoopmire and, therefore, he "aided and abetted said officer Scoopmire in each and every act and

---

[1] Rec. Doc. 3, p. 37.
[2] Rec. Doc. 3, p. 37.
[3] Rec. Doc. 3, p. 38.
[4] Rec. Doc. 3, p. 47.
[5] Rec. Doc. 3, p. 48.
[6] Rec. Doc. 3, p. 38.

action of duplicity, (either directly or indirectly), in an effort to dissuade me from pursuing legal redress in this matter."[7]

Plaintiff also alleges that he was subjected to another retaliatory search on March 23, 2016. On that occasion, his lockers were ransacked by defendants Wallace and Scott Williams and his legal work was trashed. Plaintiff complained to defendant Odom, who said that any complaint would have to be pursued through the chain of command. However, Odom nevertheless investigated the matter, later returning "a small black bag of personal property" to plaintiff but advising him that he should "leave the locker search thing alone."[8] On March 29, 2016, plaintiff appeared at a disciplinary hearing concerning a write-up resulting from the March 23 search, and he was convicted on a charge of "disobedience."

Following the hearing, plaintiff met with defendant Odom. Odom said that he had investigated plaintiff's allegations against Scoopmire and that the matter had been handled appropriately. He advised plaintiff that he needed to drop it or there could be adverse consequences.

On April 2, 2016, Odom escorted plaintiff to see defendant Jeff Williams. Plaintiff alleges:

He [Williams] stated that each and every [allegation in plaintiff's complaint against Scoopmire was] false; that I had no right to question Officer Scoopmire's decision, that I could be written up for a Rule #5 violation (aggravated disobedience); that when an officer tells me to do something, that I'm to do it and not to go to anyone else about it – EVER, or, again, it would be another Rule #5 violation.[9]

Williams further told plaintiff that he had given Scoopmire permission to require inmates to use a different bathroom when the transgender inmate was showering. He told plaintiff that he had also

---

[7] Rec. Doc. 3, p. 39.
[8] Rec. Doc. 3, p. 41.
[9] Rec. Doc. 3, p. 45.

investigated another complaint plaintiff submitted alleging that Scoopmire abused her authority, and that he likewise found that complaint unfounded.  Plaintiff alleges that Williams threatened that there would be further disciplinary consequences if plaintiff continued to pursue his complaints.

Plaintiff then asked to speak to Warden McCain about these matters but received no response.

### Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)  is frivolous or malicious;
> (ii)  fails to state a claim on which relief may be granted; or
> (iii)  seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[10] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

### Plaintiff's Claims

### 1. Denial of Use of Tier Bathroom

Plaintiff's first claim is that his rights were violated by Scoopmire's order that he use a different bathroom when the transgender inmate was showering.  That claim is patently frivolous.  Plaintiff was not denied access to a bathroom; he was simply denied access to the bathroom of his choice.  However, a prisoner has no federal constitutional right to use the bathroom of his choice.[11]

### 2.  Verbal Abuse/Threats

Plaintiff next appears to suggest that his rights were violated by various comments, insinuations, and threats.  That claim, too, is frivolous.  See Westbrook v. Treon, 78 Fed App'x 970, 972 (5th Cir. 2003) ("Verbal threats do not rise to the level of a constitutional violation."); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983...."); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) ("[A]s

---

[10] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[11] Moreover, it must be noted that the denial of permission to use the bathroom while the transgender inmate was showering applied to all inmates, not just plaintiff.  See Rec. Doc. 3, p. 45.  Thus, plaintiff's contention that the denial constituted an individualized "insinuation" against him concerning his sexuality is baseless.

a rule, mere threatening language and gestures of a custodial office [sic] do not, even if true, amount to constitutional violations." (internal quotation marks omitted)).

### 3.  Retaliatory Searches

Plaintiff also claims that he was subjected to retaliatory harassment in the form of unwarranted searches and confiscation of his property.  The United States Fifth Circuit Court of Appeals has noted that such retaliation claims must be "regarded with skepticism."  See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted).  Further, the Fifth Circuit has held:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and ellipsis omitted).

Regarding the first prong of that inquiry, plaintiff alleges that the retaliation was based on the fact that he had complained about Scoopmire.  Prisoners clearly have a First Amendment right to submit grievances and to file nonfrivolous lawsuits.  See, e.g., Richard v. Martin, 390 Fed. App'x 323, 325-26 (5th Cir. 2010) (acknowledging that there is a First Amendment right to file a prison grievance); Woods, 60 F.3d at 1164 ("The law of this circuit is clearly established ... that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."); Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (noting that the First Amendment's right of freedom of expression encompasses a right to file a prison grievance).

However, even if plaintiff's retaliation claim properly invokes a recognized constitutional right, it still fails because he cannot establish that the searches in fact stemmed from a retaliatory motive.  To support a retaliation claim, a prisoner must be able to either produce direct evidence of retaliatory motivation or show a chronology of events from which retaliation may plausibly be inferred.  Woods, 60 F.3d at 1166.  In the instant case, plaintiff has no direct evidence of the officers' motivations.  Further, he is unable to show that an inherently suspect chronology of events exists to support his retaliation claim.

Although plaintiff did in fact complain about Scoopmire, it cannot fairly be inferred that the searches were related to his complaints.  It is hardly an uncommon occurrence for prisoners to complain, and there is no basis for concluding that plaintiff's complaints – which involved relatively trifling matters, were ultimately denied as unfounded, and resulted in no adverse consequences to any officer – so enraged Scoopmire or the other officers that it caused them to embark on a campaign to harass plaintiff.  See Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *6 (E.D. La. Aug. 25, 2009).

Instead, plaintiff's allegations of a retaliatory motive are wholly speculative and conclusory.  Because prisoners must allege an adequate factual basis for a retaliation claim, conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are insufficient. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints); see also Moore v. Thaler, 436 Fed. App'x 311, 312 (5th Cir. 2011) (holding that a prisoner's "conclusional allegations, based solely on his personal beliefs, were not sufficient to support a valid constitutional claim for ... retaliation"); Tyson, 2009 WL 2883056, at *6 ("A

prisoner cannot convert a unfounded challenge to a facially reasonable prison search into an actionable constitutional claim simply by adding a barebones allegation that the guard had a retaliatory motive.").

Out of an abundance of caution, the Court further notes that, in the absence of a viable retaliation claim, the underlying actions about which plaintiff complains are not otherwise actionable.

As to the searches, the law is clear:  inmates have no reasonable expectation of privacy in their cells, and prison searches, even if conducted without any reasonable suspicion of wrongdoing, are not only constitutionally permissible but are in fact "essential to the effective security of penal institutions."  Hudson v. Palmer, 468 U.S. 517, 525-30 (1984).

As to the confiscation of his property as contraband, "prisoners have no constitutional right to possess contraband."  Lockamy v. Dunbar, Civ. Action No. 5:08cv150, 2010 WL 412816, at *4 (E.D. Tex. Jan. 28, 2010), aff'd, 399 Fed. App'x 953 (5th Cir. 2010).  Moreover, even if the property confiscated was not in fact contraband, and thus its confiscation or destruction was not authorized under prison policies, plaintiff's claim still is not actionable.  First, "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009).  Second, a claim for a loss resulting from the violation of such policies simply is not cognizable in federal court.  In Hudson, the United States Supreme Court also held that where a state actor, through his random and unauthorized actions, intentionally deprives a prisoner of his property, there is no due process violation if the state provides an adequate postdeprivation remedy.  Hudson, 468 U.S. at 533.  Louisiana law clearly provides plaintiff with an adequate postdeprivation remedy for property loss, i.e. a tort suit

brought in state court.  Bennett v. Louisiana Department of Public Safety and Corrections,  No. 02-30593, 2003 WL 1109690 (5th Cir. Feb. 19, 2003); Arnold v. Inmate Accounts, No. 02-30219, 2002 WL 31017153 (5th Cir. Aug. 20, 2002); Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *7 (E.D. La. Oct. 16, 2008); Parker v. Strain, Civ. Action No. 06-9459, 2007 WL 38281, at *2 (E.D. La. Jan. 3, 2007).

### 4.  Denial of Due Process

To the extent that plaintiff is also claiming that he was denied due process in the March 22 disciplinary proceeding, that claim likewise fails.  Prisoners have only limited due process rights with respect to disciplinary actions.  Specifically, in Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted).

In light of Sandin, the United States Fifth Circuit Court of Appeals then held that "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections.  Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added).  Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added).

Here, the only sanction plaintiff received in the disciplinary proceeding was four weeks of dorm confinement, a punishment which affected only the quality, not the duration, of his confinement. Therefore, even if he was not afforded due process in the hearing, he has no claim because the resulting punishment did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life.

### 5.  Administrative Grievances

Lastly, to the extent that plaintiff is claiming that officials have violated his constitutional rights by failing to respond (or by responding inadequately) to his complaints, that claim is legally frivolous. Simply put, inmates have no constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

### "Motion for a Temporary Restraining Order and/or a Preliminary Injunction"

In connection with this proceeding, plaintiff also filed a motion for a temporary restraining order and/or a preliminary injunction. Rec. Doc. 5. However, because his complaint is subject to immediate dismissal for the foregoing reasons, he obviously is not entitled to those forms of relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that his motion for a temporary restraining order and/or a preliminary injunction, Rec. Doc. 5, be denied.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-seventh day of May, 2016.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**